## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Cynthia E. Concepción-Bruno, et al.,<br><br>Plaintiffs,<br><br><br>v.<br><br><br>Municipality of Vega Alta, et al.,<br><br>Defendants. | Civil No. 25-1144 (GLS) |

### OPINION AND ORDER

Before the Court is Defendants Municipality of Vega Alta and María M. Vega-Pagán's Motion for Judgment on the Pleadings at Docket No. 44. Plaintiffs opposed. Docket No. 45. Defendants replied and Plaintiffs filed a sur-reply. Docket Nos. 50, 54. For the reasons set forth below, Defendants' Motion for Judgment on the Pleadings at Docket No. 44 is **DENIED**.

### I.        Background

Plaintiff Cynthia E. Concepción-Bruno is a resident of Vega Alta diagnosed with Neuromyelitis Optica, a neurological condition that affects her central nervous system, specifically her optic nerve and spinal cord. Docket No. 35 ¶ 2. As a result of this disease, she has developed multiple lesions in her spinal cord, significantly impacting her mobility and her ability to perform various daily activities independently. Id. ¶ 17. The complaint asserts: (1) a First Cause of Action under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, based on alleged architectural barriers in the Municipality's public sidewalk network; and (2) a Second Cause of Action under the First Amendment alleging viewpoint-based discrimination through the Municipality's Facebook page.[1]

---

[1]        Although Concepción-Bruno seeks relief under both claims, Plaintiff Mariann Ramos-Chévere seeks relief only under the Second Cause of Action. Because the Motion for Judgment on the Pleadings pertains solely to the claim asserted in the First Cause of Action, this order addresses only Concepción-Bruno's allegations related to that claim.

Concepción-Bruno, et al. v. Municipality of Vega Alta, et al.
Civil No. 25-1144 (GLS)

The First Cause of Action is organized into two parts. The first addresses locations where Concepción-Bruno personally encountered barriers while navigating the Municipality's sidewalks on foot with her rollator walker. The second section, titled "Unencountered Barriers" (Docket No. 35 at ¶¶ 71-90), identifies locations where Concepción-Bruno alleges that she has actual knowledge of accessibility barriers that deter her from traversing those routes on foot. For each such location, the complaint specifies: (1) the geographic coordinates of the barrier; (2) the specific nature of the ADA deficiency (e.g., deteriorated curb ramps, excessive slopes, or inadequate sidewalk width); (3) the businesses, churches, or services Concepción-Bruno intends to access via the route; (4) why the route is the most direct path available given her disability; (5) how she acquired knowledge of the barrier; and (6) and the deterrent effect of the known barrier. Id.

Defendants move for judgment on the pleadings, arguing that Concepción-Bruno lacks standing with respect to the claim due to the unencountered barriers because she does not allege to have attempted access to those locations and has thus failed to allege a "real and immediate threat" of future injury. Docket No. 44 at p. 3. In the alternative, Defendants argue that the Court should decline exercise of jurisdiction over the allegations concerning the unencountered barriers based on prudential considerations. Id. at p. 15. Concepción-Bruno counters that the First Circuit has expressly rejected the proposition that a disabled person must subject herself to repeated encounters with discriminatory conditions to invoke the protections under the ADA. Docket No. 45 at p. 4. Concepción-Bruno further argues that the allegations concerning each unencountered barrier are detailed and particularized and that Defendant's Exhibit 1 conspicuously omits those allegations. Id. at pp. 4-5.

## II.    Legal Standard

Under Rule 12(c) of the Federal Rules of Civil Procedure, after the closing of the pleadings stage but early enough not to delay trial, a party may move the Court for judgment on the pleadings. FED. R. CIV. P. 12(c). Nothing in the text of the rule requires the Court to apply any specific standard of review. NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 8 (1st Cir. 2002). A motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6). Pérez-Acevedo v. Rivero Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citation omitted). All well-pleaded factual allegations in the complaint are taken as true and all reasonable inferences therefrom are drawn in favor of the plaintiff. Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). To survive a motion for judgment on the pleadings, the complaint must contain sufficient factual

Concepción-Bruno, et al. v. Municipality of Vega Alta, et al.
Civil No. 25-1144 (GLS)

matter to state a claim for relief that is plausible. Id. For a claim to be plausible, the claim does not need to be probable but must assert more than a mere possibility of liability. Id. at 45 (citations omitted); Castro-Cruz v. Municipio de Caguas, 2019 WL 3403899, at *2 (D.P.R. July 26, 2019) (the factual allegations in the complaint must be sufficient to assert a right of relief that is not speculative). Bald assertions and conclusory factual allegations are insufficient. Id. (citations omitted).

### III.    Discussion

#### 1.    Plausibility under Twombly and Iqbal

Defendants contend that the Unencountered Barriers allegations are insufficiently particularized to satisfy Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Court disagrees. A complaint need only allege "enough facts to state a claim to relief that is plausible on its face," meaning that it should contain sufficient factual content to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 678. The Unencountered Barriers section far exceeds that threshold. For each location, the complaint provides precise GPS coordinates, identifies the specific ADA deficiencies by reference to applicable standards, names the establishments and services Concepción-Bruno intends to access, explains why the route is necessary given her disability, and describes how she acquired knowledge of the conditions. Docket No. 35 ¶¶ 71-90. Defendants' Exhibit 1 at Docket No. 44-1 purports to summarize the Unencountered Barriers allegations, but that summary systematically omits the intent-to-use allegations, disability-specific necessity explanations, and knowledge-acquisition averments of the complaint. The pleadings comply with the plausibility threshold under Twombly and Iqbal.

#### 2.    Standing

Article III of the Constitution limits federal jurisdiction to actual cases and controversies. U.S. Const. art. III, § 2. Standing is the doctrine through which courts enforce that constitutional limitation. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). To establish constitutional standing, a plaintiff must demonstrate three elements. First, the plaintiff must have suffered an "injury in fact" or an invasion of a legally protected interest that is both concrete and particularized, and actual or imminent, rather than conjectural or hypothetical. Id. (cleaned up). An injury is "particularized" if it affects the plaintiff "in a personal and individual way." Id. at 560 n.1. Second, the plaintiff must show a causal connection between the injury and the challenged

3

Concepción-Bruno, et al. v. Municipality of Vega Alta, et al.
Civil No. 25-1144 (GLS)

conduct, such that the injury is "fairly traceable" to the defendant's actions. Id. Third, the plaintiff must establish that it is "likely, as opposed to merely speculative," that the injury will be redressed by a favorable decision. Id. at 561. These elements are not mere pleading requirements; these are an indispensable part of the plaintiff's case. Id. At the pleading stage, however, general factual allegations of injury are sufficient, as the Court presumes that those allegations encompass the specific facts necessary to state a claim. Id.

The crux of the parties' dispute is whether a disabled plaintiff who acquires actual knowledge of an architectural barrier *without physically encountering the barrier on foot* may suffer a cognizable injury in fact. Both parties have assumed in their arguments that the futile gesture doctrine, codified in Title III of the ADA at 42 U.S.C. § 12188(a)(1), governs Concepción-Bruno's standing to challenge unencountered barriers. And neither party has acknowledged that this case has been brought under Title II, rather than Title III, of the ADA, and that Title II of the ADA does not contain an analogous provision.

Title III of the ADA applies to private places of public accommodation. Its remedial provision states, in relevant part, that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). Every case applying the futile gesture doctrine in the ADA context that the parties cite in their respective briefs arises under Title III. In Dudley v. Hannaford Bros. Co., the First Circuit interpreted Section 12188(a)(1) in a Title III action arising from a supermarket's refusal to reconsider its policy of denying alcohol sales to a disabled customer. 333 F.3d 299, 301-05 (1st Cir. 2003). In Steger v. Franco, Inc., the Eighth Circuit applied the doctrine in a Title III action challenging the premises of a private office building. 228 F.3d 889, 891-92 (8th Cir. 2000). In Doran v. 7-Eleven, Inc., the Ninth Circuit expressly analyzed Section 12188(a)(1) in the context of a Title III suit against a convenience store. 524 F.3d 1034, 1045-46 (9th Cir. 2008).

Title II of the ADA, which governs Concepción-Bruno's claims, applies to public entities. Its enforcement provision is found at 42 U.S.C. § 12133, which incorporates by reference the remedies, procedures, and rights set forth in Section 505 of the Rehabilitation Act, 29 U.S.C. § 794a. Section 12133 does not incorporate the language found in Section 12188(a)(1). And the futile gesture provision is located within Subchapter III of the ADA and applies, by its terms, to actions under that subchapter. It does not, on its face, extend to Title II claims. The parties have

4

Concepción-Bruno, et al. v. Municipality of Vega Alta, et al.
Civil No. 25-1144 (GLS)

not pointed to any binding authority holding that the futile gesture doctrine as codified in Section 12188(a)(1) applies to Title II claims brought against public entities. Nor has this Court found any controlling precedent on this issue. The only authority the Court has identified is in Frame v. City of Arlington, a Fifth Circuit decision that appears to have applied the doctrine in recognizing Article III standing to assert claims for barriers the plaintiff had not personally encountered. 657 F.3d 215, 235-36 (5th Cir. 2011) ("a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that an inaccessible sidewalk actually affects his activities in some concrete way."). Naturally, that decision while instructive is not binding on the Court. Nonetheless, the Court need not decide whether Section 12188(a)(1) applies to Title II claims at this time. As discussed below, Concepción-Bruno's standing to challenge unencountered barriers is independently supported by the constitutional deterrence framework applicable to all ADA claims, by the text and structure of Title II, and by the prudential policies that govern the scope of ADA litigation.

> **a.      The Constitutional Deterrence Framework Operates Independently of Section 12188(a)(1)**

Although the futile gesture doctrine as statutorily codified is a Title III provision, it reflects a broader constitutional principle: that a plaintiff who has actual knowledge of a barrier and is thereby deterred from accessing a public service or accommodation has suffered a present, concrete injury, not a conjectural or hypothetical one. This constitutional principle operates independently of any statutory provision and applies with equal force to Title II claims. The First Circuit recognized as much in Disabled Americans for Equal Access, Inc. v. Ferries del Caribe, Inc., 405 F.3d 60 (1st Cir. 2005). There, the court held that "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA" has suffered "actual injury," and that a plaintiff "threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA" suffers "imminent injury." Id. at 64 (quoting Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1138 (9th Cir. 2002)). While Ferries del Caribe arose under Title III, its articulation of the injury-in-fact framework rests on Article III principles, not on the text of Section 12188(a)(1). The deterring effect of the barriers are the same whether the plaintiff invokes Title II or Title III. That is, the injury, as conceived by the First Circuit in Ferries del Caribe, is not different depending on the statutory vehicle used to bring forth a claim for relief.

Concepción-Bruno, et al. v. Municipality of Vega Alta, et al.
Civil No. 25-1144 (GLS)

Application of this principle also finds support in the U.S. Supreme Court's instruction that courts take a broad view of standing in civil rights cases, "especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" Doran, 524 F.3d at 1040 (quoting Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 209 (1972)). It likewise accords with the general principle that standing doctrine should not require disabled persons to subject themselves to repeated or dangerous encounters with known barriers before they may seek judicial relief. Dudley, 333 F.3d at 305-06. That principle, though articulated in a Title III case, reflects a judgment about what should be the scope of an actual or imminent injury under Article III, and such a judgment should apply uniformly regardless of which ADA subchapter the plaintiff invokes.

Plaintiff has sufficiently pled an injury in fact as to the unencountered barriers. For each location identified in the Unencountered Barriers section, the complaint provides GPS coordinates and landmark references for the specific barrier, describes the nature of the ADA noncompliance, identifies the businesses, churches, or services Concepción-Bruno intends to access via the route, explains why that route is the most direct or only practical path available given her reliance on a rollator walker, specifies how she acquired actual knowledge of the conditions through direct personal observations, and alleges that the known barriers currently deter her from attempting to use those routes. Docket No. 35 at ¶¶ 71-90. Concepción-Bruno alleges a present, ongoing exclusion from specific routes in her own community rooted in direct personal observation of specific, identified conditions. Concepción-Bruno further alleges that she is a resident of Vega Alta who needs to use specific sidewalks in her municipality to perform routine daily activities and that she is presently deterred from doing so because of conditions she has directly observed. Id. This is the antithesis of the aspirational "someday" intentions the U.S. Supreme Court found insufficient in Lujan. 504 U.S. at 564. And, as to the traceability and redressability requirements, Concepción-Bruno alleges that the Municipality bears legal responsibility for the accessibility of its public sidewalks and rights-of-way under Title II and its implementing regulations. 28 C.F.R. §§ 35.133, 35.150. Concepción-Bruno's alleged exclusion from portions of that network is fairly traceable to the Municipality's alleged failure to maintain accessible infrastructure. An order compelling compliance would remedy that exclusion by removing the barriers and permitting Concepción-Bruno to ambulate through those routes.

Concepción-Bruno, et al. v. Municipality of Vega Alta, et al.
Civil No. 25-1144 (GLS)

Moreover, none of the cases relied upon by Defendants compel dismissal. In <u>Shotz v. Cates</u>, two Florida plaintiffs attended a proceeding at a country courthouse in Levy County in July 1999 and "since their July 1999 visit […] have not attempted to return, nor have they alleged that they intend to do so in the future." 256 F.3d 1077, 1082 (11th Cir. 2001). The Eleventh Circuit found plaintiffs lacked standing because the complaint "contains only past incidents of discrimination" without any forward-looking allegation. <u>Id</u>. The absence of any intent-to-return allegation that proved fatal in <u>Shotz</u> is not present here. Concepción-Bruno alleges a present and continuing deterrence from using specific routes she would otherwise regularly use to access identified destinations within her community.

In <u>Harty v. Koutsourades</u>, the plaintiff was a serial ADA tester from Florida who filed approximately thirty nearly identical suits against hotels in New York he had no genuine intention of visiting. 2021 WL 1299495, at *4-5 (S.D.N.Y. Apr. 7, 2021). The court found that his complaint contained only "vague and conclusory allegations concerning Plaintiff's future use" amounting to "a bare procedural violation and not any concrete harm." <u>Id</u>. at *5. The facts in <u>Harty</u> bear no resemblance to the present case. Concepción-Bruno is not a tester. She is a municipal resident with a specific disability who identifies specific establishments she wishes to visit, specific routes she must use given her condition, and specific activities (such as purchasing food, attending church, and accessing medical services) that the barriers currently obstruct.

In <u>Lujan</u>, the plaintiffs offered declarations that they "had visited" project sites in Egypt and Sri Lanka years before and "intent" to return someday, but without any concrete plans or specification of when that "someday" would be. 504 U.S. at 564. The U.S. Supreme Court held that such aspirational intentions, without "even any specification of when the some day will be […] do not support a finding of the 'actual or imminent' injury that our cases require." <u>Id</u>. (citation omitted). Concepción-Bruno does not allege aspirational intentions to visit remote locations at an unspecific future. She alleges a present deterrence from using specific sidewalks in her own municipality, identified by GPS coordinates, that she needs for specific routine daily activities.

### b.    Title II's Text and Structure Independently Support Standing

Title II's text provides a second, independent basis for Concepción-Bruno's standing. Title II of the ADA prohibits a public entity from excluding any qualified individual with a disability from participation in or denying her the benefits of "the services, programs, or activities of [the] public entity." 42 U.S.C. § 12132. Its implementing regulations impose an affirmative, ongoing

7

Concepción-Bruno, et al. v. Municipality of Vega Alta, et al.
Civil No. 25-1144 (GLS)

obligation on public entities to operate each service, program, or activity "so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). Public entities are additionally required to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. § 35.133(a). Municipal sidewalks and public rights-of-way are "services, programs, or activities" within the meaning of Title II. Barden v. City of Sacramento, 292 F.3d 1073, 1076 (9th Cir. 2002); see also Frame, 657 F.3d at 226.

A careful reading of the Title II provisions reveals an important distinction between Title II and Title III that is relevant to the standing issue here. Under Title III, the relevant unit is a discrete private property; a plaintiff has standing to challenge all disability-related barriers on a given property once she establishes injury on account of one non-compliant area of the property. Steger, 228 F.3d at 894; Doran, 524 F.3d at 1046-47. Under Title II, the relevant unit is the public entity's integrated service. The Municipality's obligation under Title II and its implementing regulations is not to make individual sidewalk segments accessible only after each one is physically encountered by a disabled plaintiff but to ensure that the pedestrian network, "when viewed in its entirety," is readily accessible. 28 C.F.R. § 35.150(a). A disabled resident who is deterred from using any component of that integrated network due to known barriers is, in the language of the statute, being "excluded from participation in" or "denied the benefits of" the municipality's pedestrian services. 42 U.S.C. § 12132. In Frame, the Fifth Circuit recognized this distinction and held that "building and altering city sidewalks unambiguously are 'services' of a public entity under any reasonable understanding of that term," and that "'imminence' is an 'elastic concept' that is broad enough to accommodate challenges to at least some sidewalks that a disabled person has not personally encountered." 657 F.3d at 226, 236.

c.    **Prudential Standing**

Apart from the constitutional minimum required by Article III, courts have developed prudential limits on the exercise of federal jurisdiction. Doran, 524 F.3d at 1039, 1044–45. These judicially self-imposed limits include: (1) "the general prohibition on a litigant's raising another person's legal rights;" (2) "the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches;" and (3) "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Allen v. Wright, 468

Concepción-Bruno, et al. v. Municipality of Vega Alta, et al.
Civil No. 25-1144 (GLS)

U.S. 737, 751 (1984). Prudential standing is distinct from its constitutional counterpart. While the three Lujan elements define the outer limits of federal jurisdiction, prudential considerations address whether the exercise of that jurisdiction is appropriate given the particular plaintiff and claims advanced. The question is whether permitting Concepción-Bruno to challenge barriers at locations she has directly observed but not physically traversed implicates abstract questions of wide public significance divorced from her personal stake, or whether it enforces her own concrete right to access the municipality's pedestrian services. It plainly does the latter.

Although Steger and Doran were Title III cases, both courts recognized that restricting ADA plaintiffs to barriers they physically encountered would produce "piecemeal compliance" that is "not only inefficient, but impractical." Steger, 228 F.3d at 894; Doran, 524 F.3d at 1046 ("permitting a plaintiff to challenge only barriers that he or she personally encountered or of which the plaintiff had first-hand knowledge, not only would invite but would require disabled plaintiffs to engage in piecemeal litigation to eliminate barriers the ADA prohibits."). That concern applies with equal if not greater force to claims under Title II. Under Title III, the piecemeal-compliance problem may operate for different barriers in one same property. Under Title II, requiring a disabled municipal resident to individually encounter each inaccessible sidewalk segment before she may challenge their non-compliance in court would be exceedingly burdensome and impractical. It would also require a disabled municipal resident to place herself in physical danger (by ambulating through known hazards with a rollator walker) before being able to invoke the statute's protections. Nothing in Title II, its implementing regulations, or Article III compels that outcome.

Concepción-Bruno's claims are not a generalized grievance. A "generalized grievance" is one shared "in substantially equal measure by all or a large class of citizens." Warth v. Seldin, 422 U.S. 490, 499 (1975). Her injury is not shared equally by all residents of Vega Alta. Non-disabled residents can potentially walk through cracked sidewalks, steep curb ramps, and narrowed passages without the rollator walker that Concepción-Bruno's condition requires. Her injury is uniquely particularized to her disability and her need for accessible pedestrian infrastructure. Congress enacted Title II's private right of action in 42 U.S.C. § 12133 precisely to provide a federal judicial remedy for this type of discrimination. The Municipality may not invoke prudential concerns to shield itself from accountability under a statute specifically designed to protect individuals in Concepción-Bruno's position.

9

Concepción-Bruno, et al. v. Municipality of Vega Alta, et al.
Civil No. 25-1144 (GLS)

### IV.    Conclusion

The futile gesture doctrine codified in 42 U.S.C. § 12188(a)(1) is a Title III provision. Because this case is brought under Title II, and because neither party has addressed the applicability of that provision to Title II claims, the Court declines to rely on it. Nonetheless, the futile gesture doctrine reflects a broader constitutional principle — that actual knowledge of a barrier producing a present deterrent effect constitutes a concrete, particularized injury under Article III — that operates independently of the Title III statute and applies with equal force here. Further, Title II's text, its implementing regulations and the integrated-service framework it establishes, as well as prudential considerations, independently support Concepción-Bruno's standing. Concepción-Bruno's specific, location-by-location allegations in the Unencountered Barriers section provide more than sufficient factual content to satisfy Twombly and Iqbal.

Defendants' Motion for Partial Judgment on the Pleadings is **DENIED**.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 27th day of May 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge

10